HENRIETTE· v. DUPLESSIS.

A nuncupative testament, executed under private signature in the country, in the presence
of only four witnesses residing in the place where it was made, is valid, when from the
violence of the disease with which the testator was attacked, and the distance at which
other persons competent as witnesses resided, a greater number could not be procured.

APPEAL from·the District Court of Plaquemines, *Rousseau*, J. *Lombard*,
for the plaintiff, cited Code Just. b. 6, tit. 23, law 8. Code Nap. art. 985·
French Ordon. of 1735, ss. 33 to 37. Ferrari's Span. Library, vol. 5, *verbo*
Testamentum. *Preston*, for the appellant. The judgment of the court was
pronounced by

KING, J. The· plaintiff claims her freedom under a nuncupative will, exe-
uted by her former owner, *Martin Duplessis*, under private signature, in the
country, in the presence of five witnesses. The objections originally urged
against the validity· of the will, upon which her claim for freedom depends,
were considered, and most of them overruled, in the case of *Sophie* v. *Duples-
sis et al.* 2 Ann. Rep. 725. In that case, in consequence of certain defects of
proof, a judgment was rendered as in case of non-suit, leaving the plaintiff, in
any future action that she might institute, to supply those defects, and particu-
larly to show either that the witnesses all resided in the parish in which the
will was made ; or, if they did not, that a greater number could not have been
procured by the exercise of reasonable·diligence. On the trial of the present
cause, evidence was introduced to both of these points. It was admitted that
four of the witnesses were residents of the parish where the will was made.
The testimony in relation to the residence of the fifth, was contradictory and
unsatisfactory. The district judge, however, considered, under the evidence,
that a greater number of witnesses· could not, under the circumstances, have
been obtained ; sustained the validity of the will ; and decreed the plaintiff to
be entitled to her liberty. From this judgment, the defendant has appealed.

The evidence has not satisfied us that *Ravano*, one of the witnesses to the
will, was,· at the date of its execution, a resident of the parish in which it was
made. The only question, therefore, to be determined is, whether, consider-
ing the exigencies of the occasion when the testament was made, sufficient
cause has been shown to excuse the failure to procure a greater number of.
competent witnesses.

The circumstances under which the will· was made were, that *Paul Cornen*,
the person who prepared it; was called to attend upon the testator, who was
laboring at the time under an attack of the cholera. Being present, he was re-
quested by the testator to draw up his will, which *Cornen* at first declined, on
the ground of his want of skill and ignorance of law ; but being urged by the·
testator, who was on the eve of dissolution, he yielded,· and used as witnesses
the five persons present, of whom he himself was one. *Cornen* states in his
testimony, "that he took the persons present for witnesses to the will, because
the state of the deceased admitted of no delay ; that the testator died of the
cholera ; that he died an hour, or half an hour after the will was made, he
being too ill to sign the will." It is further in proof that four persons lived
within about a mile of the testator's residence, and several others within about

five miles, who were competent, and would have assisted as witnesses, if they had been called on.   *Cornen* says that, if he had been requested earlier to prepare the will, he could have procured the required number of competent witnesses.

The testimony of this witness, who prepared the will, satisfied the judge, in whose presence he testified, and to whom he was probably known, that the emergency was such as to render it impossible to procure the timely attendance of a greater number of witnesses, and to excuse the failure to attempt to procure others.

It is urged that the testator made his will on the eve of his dissolution; that he was aware of the general prevalence of a fatal disease, and should have prepared it earlier, when it could have been made with more deliberation, and clothed with all the forms required by law; that he could not defer making it to the last hour, and thus create the necessity which would bring him within the exception to the rule requiring testaments to be received in the presence of five witnesses residing in the place.   However reasonable this objection may appear, the law has fixed no time previous to death within which wills are to be made.   No restraint is placed upon the testator in this respect.   He is indulged down to the moment of his decease, if he retain his reason, which is the only condition imposed.   Indeed the execution of this solemn act is most commonly deferred, until the near approach of death warns the testator that it can no longer be safely postponed.

The Code, in providing that nuncupative wills under private signature may be executed in the country in the presence of three witnesses residing in the place, provided a greater number can not be had, specifies none of the causes which will excuse a failure to procure the full number.   The impossibility may arise, not only in consequence of no other witnesses residing in the neighborhood of the testator, or of the refusal of witnesses to attend; but other causes may render it equally impracticable to procure the full number.   The urgency of the occasion, when one is suddenly stricken with a violent and fatal disease, which threatens immediate dissolution, may present an impediment quite as serious to obtaining the requisite number, as a sparse population, or the unwillingness of witnesses to assist.

In the present instance, the testator was laboring under an attack of cholera, which had so far progressed before he became aware that his life was endangered, or evinced a desire to make his will, that the person who prepared the act considered that his state admitted of no delay, and that the persons present must be used as witnesses.   There was a pressing necessity for immediate action.   The will was evidently prepared with haste, and when completed the testator was so far overcome by his disease as to be unable to sign, and died within half an hour or an hour after it was executed.   The delay which would have attended an effort to procure other witnesses, who lived at the distance of only a mile, would, as the result proved, have probably defeated the testator's intentions.   A necessity more urgent could not well be presented for dispensing with the attendance of the full number of competent witnesses; and, in our opinion, it excuses the failure to procure them.

*Judgment affirmed.*